MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------X

ORLANDO MINO HERNANDEZ, OSMEL
RUBEN SOSA NAJERA, RAFAEL
BASURTO GOMEZ, JOSE LUIS MENDEZ,
MIGUEL MIRANDA, ROSALIO PEREZ,
ANGEL GEOVANI RAMOS, and PALEMON
BENITO ANTONIO *individually and on
behalf of others similarly situated,*

**FIRST AMENDED COMPLAINT**

**20-cv-04457-RA**

*Plaintiffs*,

-against-

LIRA OF NEW YORK INC (D/B/A LUKE'S
BAR & GRILL), LUIGI MILITELO,
TOMMY TIN, JONATHAN MATEOS, and
LUIGI LUSARDI,

*Defendants.*

--------------------------------------------------------X

   Plaintiffs Orlando Mino Hernandez, Osmel Ruben Sosa Najera, Rafael Basurto Gomez,

Jose Luis Mendez, Miguel Miranda, Rosalio Perez, Angel Geovani Ramos, and Palemon Benito

Antonio, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and

through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and

as against Lira of New York Inc. (d/b/a Luke's Bar & Grill), ("Defendant Corporation"), Luigi

Militelo, Tommy Tin, Jonathan Mateos, and Luigi Lusardi ("Individual Defendants"),

(collectively, "Defendants"), allege as follows:

## <u>NATURE OF ACTION</u>

   1.  Plaintiffs are former employees of Defendants Lira of New York Inc. (d/b/a Luke's

Bar & Grill), Luigi Militelo, Tommy Tin, Jonathan Mateos, and Luigi Lusardi.

2.     Defendants own, operate, or control a bar located at 1394 3rd Ave, New York, NY 10075 under the name "Luke's Bar & Grill".

3.     Upon information and belief, individual Defendants Luigi Militelo, Tommy Tin, Jonathan Mateos, and Luigi Lusardi serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the bar/restaurant as a joint or unified enterprise.

4.     Plaintiffs were employed as delivery workers, food preparers, dishwashers, a food runner, a salad preparer and griller, and a porter at the restaurant located at 1394 3rd Ave, New York, NY 10075.

5.     Plaintiffs Sosa, Gomez and Miranda were ostensibly employed as delivery workers and Plaintiff Ramos was ostensibly employed as a food runner. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to cutting bread, refilling the stations with plates, refilling the stations with containers for soups, and containers for salads, food prepping (Plaintiffs Sosa, Miranda and Gomez) and prepping the station, bringing food to the bar, unpacking deliveries, reading tickets bringing up ice for the bar, bringing bottles and cans of drinks up from the basement and bringing down trash from the bar to the basement (Plaintiff Ramos), (hereafter the "non-tipped duties").

6.     At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.     Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8. Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9. Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

10. Defendants employed and accounted for Plaintiffs Sosa, Gomez and Miranda as delivery workers and Plaintiff Ramos as a food runner in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

11. Regardless, at all relevant times, Defendants paid Plaintiffs Sosa, Gomez, Miranda and Ramos at a rate that was lower than the required tip-credit rate.

12. However, under *both the FLSA and NYLL*, Defendants were not entitled to take a tip credit because these Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13. Upon information and belief, Defendants employed the policy and practice of disguising these Plaintiffs' actual duties in payroll records by designating them as tipped workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiff Sosa Gomez, Miranda and Ramos at the minimum wage rate and enabled them to pay them at the tip-credit rate (which they still failed to do).

14. Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

15. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

16. Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of

1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

17.     Plaintiffs now bring this action as a class action under Rule 23 and seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

19.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a bar located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

20.     Plaintiff Orlando Mino Hernandez ("Plaintiff Hernandez" or "Mr. Hernandez") is an adult individual residing in Bronx County, New York.

21.     Plaintiff Hernandez was employed by Defendants at Luke's Bar & Grill from approximately May 2005 until on or about March 7, 2020.

22.     Plaintiff Osmel Ruben Sosa Najera ("Plaintiff Sosa" or "Mr. Sosa") is an adult individual residing in Bronx County, New York.

23.     Plaintiff Sosa was employed by Defendants at Luke's Bar & Grill from approximately December 2013 until on or about March 4, 2020.

24.     Plaintiff Rafael Basurto Gomez ("Plaintiff Gomez" or "Mr. Gomez") is an adult individual residing in Bronx County, New York.

25.     Plaintiff Gomez was employed by Defendants at Luke's Bar & Grill from approximately 2013 until on or about March 11, 2020.

26.     Plaintiff Jose Luis Mendez ("Plaintiff Mendez" or "Mr. Mendez") is an adult individual residing in Queens County, New York.

27.     Plaintiff Mendez was employed by Defendants at Luke's Bar & Grill from approximately June 2016 until on or about April 23, 2017.

28.     Plaintiff Miguel Miranda ("Plaintiff Miranda" or "Mr. Miranda") is an adult individual residing in New York County, New York.

29.     Plaintiff Miranda was employed by Defendants at Luke's Bar & Grill from approximately 2013 until on or about February 12, 2020.

30.     Plaintiff Rosalio Perez ("Plaintiff Perez" or "Mr. Perez") is an adult individual residing in New York County, New York.

31.     Plaintiff Perez was employed by Defendants at Luke's Bar & Grill from approximately 2013 until on or about December 2019.

32.     Plaintiff Angel Geovani Ramos ("Plaintiff Ramos" or "Mr. Ramos") is an adult individual residing in New York County, New York.

33.     Plaintiff Ramos was employed by Defendants at Luke's Bar & Grill from approximately 2007 until on or about July 10, 2020.

34.     Plaintiff Palemon Benito Antonio ("Plaintiff Antonio" or "Mr. Antonio") is an adult individual residing in New York County, New York.

35.     Plaintiff Antonio was employed by Defendants at Luke's Bar & Grill from approximately August 2015 until on or about January 19, 2021.

*Defendants*

36.     At all relevant times, Defendants owned, operated, or controlled a bar and restaurant located at 1394 3rd Ave, New York, NY 10075 under the name "Luke's Bar & Grill".

37.     Upon information and belief, Lira of New York Inc. (d/b/a Luke's Bar & Grill) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1394 3rd Ave, New York, NY 10075.

38.     Defendant Luigi Militelo is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Luigi Militelo is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Luigi Militelo possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

39.     Defendant Tommy Tin is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Tommy Tin is sued individually in his capacity as a manager of Defendant Corporation. Defendant Tommy Tin possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

40.     Defendant Jonathan Mateos is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Jonathan Mateos is sued individually in his capacity as a manager of Defendant Corporation. Defendant Jonathan Mateos possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

41.     Defendant Luigi Lusardi was an individual who was engaged in business in this judicial district during the relevant time period. Defendant Luigi Lusardi is sued individually in his capacity as a former owner of Defendant Corporation. Defendant Luigi Lusardi possessed operational control over Defendant Corporation and controlled significant functions of Defendant Corporation during a portion of the relevant time period. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

42.     Defendants operate or operated a bar located in the Upper East Side of Manhattan in New York City.

43.     Individual Defendants, Luigi Militelo, Tommy Tin, Jonathan Mateos, and Luigi Lusardi possess or possessed operational control over Defendant Corporation, possess or possessed ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

44. Defendants are and or were associated and joint employers, acted in the interest of each other with respect to employees, paid employees by the same method, and shared control over the employees.

45. Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

46. Defendants jointly employed Plaintiffs (and all similarly situated employees) and are or were Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

47. In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

48. Upon information and belief, Individual Defendants Luigi Militelo and Luigi Lusardi operate or operated Defendant Corporation as either an alter ego of themselves and/or fails or failed to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a) failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b) defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e)  operating Defendant Corporation for their own benefit and maintaining control over their Corporation as a closed Corporation,

f)  intermingling assets and debts of their own with Defendant Corporation,

g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

49.  At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

50.  In each year from 2013 to 2021, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

51.  In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

52.  Plaintiffs are former employees of Defendants who were employed as food preparers, as a porter, as dishwashers, a food runner, a salad preparer and griller, and ostensibly as delivery workers. However, the delivery workers and the food runner spent over 20% of each shift performing the non-tipped duties described above.

53.  Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

54.     Plaintiff Hernandez was employed by Defendants at Luke's Bar & Grill from approximately May 2005 until on or about March 7, 2020.

55.     Defendants employed Plaintiff Hernandez as a food preparer.

56.     Plaintiff Hernandez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

57.     Plaintiff Hernandez's work duties required neither discretion nor independent judgment.

58.     Throughout his employment with Defendants, Plaintiff Hernandez regularly worked in excess of 40 hours per week.

59.     From approximately June 2014 until on or about October 2019, Plaintiff Hernandez worked from approximately 9:00 a.m. until on or about 6:00 p.m., 5 days a week and from approximately 9:00 a.m. until on or about 8:30 p.m., 2 days a week (typically 68 hours per week).

60.     From approximately November 2019 until on or about March 7, 2020, Plaintiff Hernandez worked from approximately 9:00 a.m. until on or about 5:00 p.m., 6 days a week and from approximately 9:00 a.m. until on or about 5:00 p.m., for every two weeks of every month Plaintiff Hernandez worked 7 days a week (typically 48 to 56 hours per week).

61.     From approximately June 2014 until on or about March 2019, Defendants paid Plaintiff Hernandez his wages in a combination of check and cash.

62.     From approximately March 2019 until on or about March 7, 2020, Defendants paid Plaintiff Hernandez his wages in cash.

63.     From approximately June 2014 until on or about December 2014, Defendants paid Plaintiff Hernandez a fixed salary of $604 per week for all hours worked (a check for $320 and $284 in cash).

64.     From approximately January 2015 until on or about December 2015, Defendants paid Plaintiff Hernandez a fixed salary of $634 per week for all hours worked (a check for $350 and $284 in cash).

65.     From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff Hernandez a fixed salary of $644 per week for all hours worked (a check for $360 and $284 in cash).

66.     From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Hernandez a fixed salary of $720.00 per week (for all hours worked a check for $440 and $284 in cash).

67.     From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Hernandez a fixed salary of $804.00 per week for all hours worked (a check for $520 and $284 in cash).

68.     From approximately January 2019 until on or about March 2019, Defendants paid Plaintiff Hernandez a fixed salary of $884.00 per week for all hours worked (a check of $600.00 and $284 in cash).

69.     From approximately March 2019 until on or about March 2020, Defendants paid Plaintiff Hernandez a fixed salary of $780 per week for 6 days worked and a fixed salary of $880 per week for 7 days worked.

70.     Plaintiff Hernandez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

71.     For example, Defendants required Plaintiff Hernandez to work an additional 2 hours and 30 minutes past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

72.     Defendants never granted Plaintiff Hernandez any breaks or meal periods of any kind.

73.     On a number of occasions, Defendants required Plaintiff Hernandez to sign a document, the contents of which he was not allowed to review in detail.

74.     Defendants took improper and illegal deductions from Plaintiff Hernandez's wages; specifically, in 2016 Defendants deducted two days of work from Plaintiff Hernandez's weekly wages in reprisal for being caught drinking.

75.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Hernandez regarding overtime and wages under the FLSA and NYLL.

76.     Defendants did not provide Plaintiff Hernandez an accurate statement of wages, as required by NYLL 195(3).

77.     In fact, Defendants adjusted Plaintiff Hernandez's paystubs so that they reflected inaccurate wages and hours worked.

78.     Defendants did not give any notice to Plaintiff Hernandez, in English and in Spanish (Plaintiff Hernandez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

79.     Defendants required Plaintiff Hernandez to purchase "tools of the trade" with his own funds—including a pair of shoes.

*Plaintiff Osmel Ruben Sosa Najera*

80.     Plaintiff Sosa was employed by Defendants at Luke's Bar & Grill from approximately December 2013 until on or about March 4, 2020.

81.     Defendants employed Plaintiff Sosa as a porter and ostensibly as a delivery worker.

82.     However, Plaintiff Sosa was also required to spend a significant portion of his work day performing the non-tipped duties described above.

83.     Although Plaintiff Sosa ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

84. Plaintiff Sosa regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

85. Plaintiff Sosa's work duties required neither discretion nor independent judgment.

86. From approximately June 2014 until on or about July 2014, Plaintiff Sosa worked at the Luke's Bar & Grill location, as a delivery worker, from approximately 6:00 p.m. until on or about 10:00 p.m., 1 day a week, from approximately 5:00 p.m. until on or about 10:00 p.m., 2 days a week, and from approximately 6:00 p.m. until on or about 11:00 p.m., 3 days a week (typically 29 hours per week).

87. From approximately July 1, 2014 until on or about November 2014, Plaintiff Sosa worked at the Luke's Bar & Grill location, as a porter, from approximately 12:00 a.m. until on or about 10:00 a.m., 7 days a week (typically 70 hours per week).

88. From approximately November 2014 until on or about 2015, Plaintiff Sosa worked at the Luke's Bar & Grill location, as a porter, from approximately 1:00 a.m. until on or about 10:00 a.m., 6 days a week (typically 54 hours per week).

89. From approximately 2015 until on or about 2017, Plaintiff Sosa worked at the Luke's Bar & Grill location, as a porter, from approximately 1:00 a.m. until on or about 10:00 a.m., 3 days a week and from approximately 1:00 a.m. until on or about 10:00 a.m. to 11:30 a.m., 3 days a week (typically 54 to 58.5 hours per week).

90. From approximately 2018 until on or about March 4, 2020, Plaintiff Sosa worked at the Luke's Bar & Grill location, as a porter, from approximately 1:00 a.m. until on or about 10:00 a.m., 2 days a week, from approximately 1:00 a.m. until on or about 10:30 a.m., 1 day a week, and from approximately 1:00 a.m. until on or about 10:00 a.m. to 11:30 a.m., 3 days a week (typically 54.5 to 59 hours per week).

91.     From approximately June 2014 until on or about March 2020, Defendants paid Plaintiff Sosa his wages in cash for the work he performed at Luke's.

92.     From approximately June 2014 until on or about July 2014, Defendants paid Plaintiff Sosa a fixed salary of $23 per day.

93.     For the first two weeks of July 2014, Defendants paid Plaintiff Sosa a fixed salary of $560 per week.

94.     From approximately July 2014 until on or about December 2015, Defendants paid Plaintiff Sosa a fixed salary of $600 per week.

95.     From approximately January 2016 until on or about January 2017, Defendants paid Plaintiff Sosa a fixed salary of $650 per week.

96.     From approximately January 2017 until on or about January 2018, Defendants paid Plaintiff Sosa a fixed salary of $700 per week.

97.     From approximately January 2018 until on or about January 2019, defendants paid Plaintiff Sosa a fixed salary of $760.00 per week.

98.     From approximately January 2019 until on or about March 2020, Defendants paid Plaintiff Sosa a fixed salary of $800 per week.

99.     Plaintiff Sosa's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

100.    For example, Defendants required Plaintiff Sosa to work an additional 10 to 20 minutes past his scheduled departure time three days a week, and did not pay him for the additional time he worked.

101.    Defendants never granted Plaintiff Sosa any breaks or meal periods of any kind.

102.    Plaintiff Sosa was never notified by Defendants that his tips were being included as an offset for wages.

103. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Sosa's wages.

104. Plaintiff Sosa was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

105. On a number of occasions, Defendants required Plaintiff Sosa to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

106. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Sosa regarding overtime and wages under the FLSA and NYLL.

107. Defendants did not provide Plaintiff Sosa an accurate statement of wages, as required by NYLL 195(3).

108. Defendants did not give any notice to Plaintiff Sosa, in English and in Spanish (Plaintiff Sosa's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

109. Defendants required Plaintiff Sosa to purchase "tools of the trade" with his own funds—including a bicycle, a lock, a vest, and hardware tools.

*Plaintiff Rafael Basurto Gomez*

110. Plaintiff Gomez was employed by Defendants at Luke's Bar & Grill, from approximately 2013 until on or about March 11, 2020.

111. Defendants employed Plaintiff Gomez as a food preparer and ostensibly as a delivery worker.

112. However, Plaintiff Gomez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

113.    Although Plaintiff Gomez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

114.    Plaintiff Gomez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

115.    Plaintiff Gomez's work duties required neither discretion nor independent judgment.

116.    From approximately June 2014 until on or about December 2017, Plaintiff Gomez worked from approximately 5:00 p.m. until on or about 11:00 p.m. to 11:30 p.m., 6 days a week (typically 36 to 39 hours per week).

117.    For about 4 months in 2017, Plaintiff Gomez worked as a food preparer from approximately 8:00 a.m. until on or about 6:00 p.m., and as a delivery worker from approximately 6:00 p.m. until on or about 11:00 p.m. to 11:30 p.m., 6 days a week (typically 90 to 93 hours per week).

118.    From approximately January 2018 until on or about March 11, 2020, Plaintiff Gomez worked from approximately 6:00 p.m. until on or about 11:00 p.m. to 11:30 p.m., 4 days a week (typically 20 to 22 hours per week).

119.    Throughout his employment, Defendants paid Plaintiff Gomez his wages in cash.

120.    From approximately June 2014 until on or about December 2015, Defendants paid Plaintiff Gomez a fixed salary of $60 per week.

121.    From approximately January 2016 until on or about December 2017, Defendants paid Plaintiff Gomez a fixed salary of $120 per week.

122.    For approximately 4 months during 2017, Defendants paid Plaintiff Gomez $11.00 per hour when Plaintiff Gomez worked as a food preparer and $20 for the remaining 5 hours he worked as a delivery worker.

123.    From approximately January 2018 until on or about March 11, 2020, Defendants paid Plaintiff Gomez a fixed salary of $160 per week.

124.    Defendants did not pay Plaintiff Gomez any wages for his work, approximately Plaintiff Gomez is owed between $120 to $160 dollars.

125.    Plaintiff Gomez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

126.    For example, Defendants required Plaintiff Gomez to work an additional 30 minutes past his scheduled departure time four to six days a week, and did not pay him for the additional time he worked.

127.    Defendants never granted Plaintiff Gomez any breaks or meal periods of any kind.

128.    Plaintiff Gomez was never notified by Defendants that his tips were being included as an offset for wages.

129.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Gomez's wages.

130.    Although Plaintiff Gomez was required to keep track of his time, he was only required to keep track of his time during the 4 months he worked as a food preparer in 2017. As a result, Plaintiff Gomez was not compensated for all his hours worked.

131.    Defendants took improper and illegal deductions from Plaintiff Gomez's wages; specifically, Defendants deducted three to four shifts from Plaintiff Gomez's weekly wages in 2016 falsely claiming he had not worked those shifts.

132.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gomez regarding overtime and wages under the FLSA and NYLL.

133.    Defendants did not provide Plaintiff Gomez an accurate statement of wages, as required by NYLL 195(3).

134. Defendants did not give any notice to Plaintiff Gomez, in English and in Mixteco (Plaintiff Gomez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

135. Defendants required Plaintiff Gomez to purchase "tools of the trade" with his own funds—including an electric bicycle, a regular bicycle, and bicycle maintenance.

*Plaintiff Jose Luis Mendez*

136. Plaintiff Mendez was employed by Defendants at Luke's Bar & Grill, from approximately June 2016 until on or about April 23, 2017.

137. Defendants employed Plaintiff Mendez as a food preparer and a dishwasher.

138. Plaintiff Mendez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

139. Plaintiff Mendez's work duties required neither discretion nor independent judgment.

140. From approximately June 2016 until on or about April 23, 2017, Plaintiff Mendez worked from approximately 9:00 a.m. until on or about 7:00 p.m. 5 days a week, and 3:00 p.m. to 1:00 a.m. or 2:00 a.m. on Tuesdays, 6 days a week (typically 60 to 61 hours per week).

141. Throughout his employment, Defendants paid Plaintiff Mendez his wages in cash.

142. From approximately June 2016 until on or about April 23, 2017, Defendants paid Plaintiff Mendez a fixed salary of $660 per week.

143. Plaintiff Mendez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

144. For example, Defendants required Plaintiff Mendez to work an additional 1 hour past his scheduled departure time five days a week, and approximately once a month he worked an additional 1 hour on Tuesdays, and did not pay him for this additional time he worked.

145. Defendants only granted Plaintiff Mendez one fifteen minute break per day.

146.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mendez regarding overtime and wages under the FLSA and NYLL.

147.    Defendants did not provide Plaintiff Mendez an accurate statement of wages, as required by NYLL 195(3).

148.    Defendants did not give any notice to Plaintiff Mendez, in English and in Spanish (Plaintiff Mendez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Miguel Miranda*

149.    Plaintiff Miranda was employed by Defendants at Luke's Bar & Grill from approximately 2013 until on or about February 12, 2020.

150.    Defendants employed Plaintiff Miranda as a food preparer and ostensibly as a delivery worker.

151.    However, Plaintiff Miranda was also required to spend a significant portion of his work day performing the non-tipped duties described above.

152.    Although Plaintiff Miranda ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

153.    Plaintiff Miranda regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

154.    Plaintiff Miranda's work duties required neither discretion nor independent judgment.

155.    From approximately June 2014 until on or about August 2019, Plaintiff Miranda worked at the Luke's Bar & Grill location, from approximately 12:00 p.m. until on or about 9:00 p.m., 2 days a week and from approximately 12:00 p.m. until on or about 11:00 p.m., 4 days a week, Tuesdays through Sundays (typically 62 hours per week).

156.    From approximately September 1, 2019 until on or about February 2020, Plaintiff Miranda worked from approximately 4:00 p.m. until on or about 9:00 p.m., 3 days a week  and from approximately 4:00 p.m. until on or about 11:00 p.m. 3 days a week, Tuesdays through Sundays (typically 33 hours per week).

157.    Defendants paid Plaintiff Miranda his wages in cash for the work he performed at Luke's Bar & Grill, except for a period of three months in 2019 when they paid him in check instead of cash, after these three months he was once again paid in cash for the remainder of his employment.

158.    From approximately June 2014 until on or about August 2019, Defendants paid Plaintiff Miranda a fixed salary of $400 per week.

159.    From approximately September 2019 until on or about February 2020, Defendants paid Plaintiff Miranda a fixed salary of $250 per week.

160.    Plaintiff Miranda's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

161.    For example, Defendants required Plaintiff Miranda to work an additional 2 hours 4 days a week until august 2019 and then 2 hours extra 3 days a week past his scheduled departure time, and did not pay him for the additional time he worked.

162.    Defendants never granted Plaintiff Miranda any breaks or meal periods of any kind.

163.    Plaintiff Miranda was never notified by Defendants that his tips were being included as an offset for wages.

164.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Miranda's wages.

165.    Plaintiff Miranda was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

166.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Miranda regarding overtime and wages under the FLSA and NYLL.

167.    Defendants did not provide Plaintiff Miranda an accurate statement of wages, as required by NYLL 195(3).

168.    Defendants did not give any notice to Plaintiff Miranda, in English and in Spanish (Plaintiff Miranda's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

169.    Defendants required Plaintiff Miranda to purchase "tools of the trade" with his own funds—including two bicycles, a helmet, a vest, 6 sets of tires and 4 sets of lights for his bicycle.

*Plaintiff Rosalio Perez*

170.    Plaintiff Perez was employed by Defendants at Luke's Bar & Grill from approximately 2013 until on or about December 2019.

171.    Defendants employed Plaintiff Perez as a dishwasher and food preparer.

172.    Plaintiff Perez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

173.    Plaintiff Perez's work duties required neither discretion nor independent judgment.

174.    From approximately June 2014 until on or about December 2019, Plaintiff Perez worked at the Luke's Bar & Grill location, from approximately 3:00 p.m. until on or about 11:30 p.m., on Mondays, from approximately 3:00 p.m. until on or about 12:00 a.m. on Wednesdays and Thursdays, from approximately 4:00 p.m. until on or about 1:00 a.m., on Fridays, from approximately 2:00 p.m. until on or about 1:30 a.m. on Saturdays and from approximately 12:00 p.m. until on or about 11:00 p.m. on Sundays (typically 58 hours per week).

175.    Defendants paid Plaintiff Perez his wages in cash for the work he performed at Luke's Bar & Grill.

176. In the year 2014 Defendants paid Plaintiff Perez $10 per hour.

177. In the years 2015 and 2016 Defendants paid Plaintiff Perez $11.50 per hour.

178. In the year 2017 until on or about December 2019 Defendants paid Plaintiff Perez $13.00 per hour.

179. Plaintiff Perez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

180. For example, Defendants required Plaintiff Perez to work an additional 30 minutes past his scheduled departure time on Mondays and 1 hour past his scheduled departure time Wednesdays through Saturdays, and did not pay him for the additional time he worked.

181. Defendants never granted Plaintiff Perez any breaks or meal periods of any kind.

182. Plaintiff Perez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

183. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Perez regarding overtime and wages under the FLSA and NYLL.

184. Defendants did not provide Plaintiff Perez an accurate statement of wages, as required by NYLL 195(3).

185. Defendants did not give any notice to Plaintiff Perez, in English and in Spanish (Plaintiff Perez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Angel Geovani Ramos*

186. Plaintiff Ramos was employed by Defendants at Luke's Bar & Grill, from approximately 2007 until on or about July 10, 2020.

187.     Defendants employed Plaintiff Ramos as a food runner from approximately February 2015 until on or about March 2020 and as a delivery worker from approximately March 2020 until on or about July 10, 2020.

188.     However, Plaintiff Ramos was also required to spend a significant portion of his work day performing the non-tipped duties described above.

189.     Although Plaintiff Ramos ostensibly was employed as a food runner and delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

190.     Plaintiff Ramos regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

191.     Plaintiff Ramos's work duties required neither discretion nor independent judgment.

192.     From approximately July 2014 until on or about 2018, Plaintiff Ramos worked from approximately 10:30 a.m. until on or about 10:00 p.m., 6 days a week (typically 69 hours per week).

193.     From approximately 2018 until on or about June 2019, Plaintiff Ramos worked from approximately 6:00 p.m. until on or about 12:00 a.m., 4 days a week and from approximately 12:00 p.m. until on or about 1:00 a.m. Saturdays and Sundays (typically 50 hours per week).

194.     From approximately June 2019 until on or about March 17, 2020, Plaintiff Ramos worked from approximately 6:00 p.m. until on or about 12:00 a.m., 4 days a week and from approximately 5:00 p.m. until on or about 1:00 a.m. Saturdays and Sundays (typically 40 hours per week).

195.     From approximately March 18, 2020 until on or about July 10, 2020, Plaintiff Ramos worked from approximately 4:00 p.m. until on or about 8:00 p.m., 5 days a week (typically 20 hours per week).

196.     From approximately July 2014 until on or about early 2018 Defendants paid Plaintiff Ramos by check and then in or around 2018, Defendants started paying Plaintiff Ramos his wages in cash.

197.     From approximately July 2014 until on or about 2018, Defendants paid Plaintiff Ramos $8.75 per hour.

198.     From approximately 2019 until on or about July 10, 2020, Defendants paid Plaintiff Ramos $10.00 per hour.

199.     Plaintiff Ramos's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

200.     For example, Defendants required Plaintiff Ramos to work an additional 30 minutes to one hour past his scheduled departure time daily, and did not pay him for the additional time he worked.

201.     Plaintiff Ramos was never notified by Defendants that his tips were being included as an offset for wages.

202.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ramos's wages.

203.     Plaintiff Ramos was never required to keep track of his time, as a result, Plaintiff Ramos was not compensated for all his hours worked.

204.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ramos regarding overtime and wages under the FLSA and NYLL.

205.     Defendants did not provide Plaintiff Ramos an accurate statement of wages, as required by NYLL 195(3).

206. Defendants did not give any notice to Plaintiff Ramos, in English and in Spanish (Plaintiff Ramos's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

207. Defendants required Plaintiff Ramos to purchase "tools of the trade" with his own funds—including an electric bicycle and a bicycle lock.

*Plaintiff Palemon Benito Antonio*

208. Plaintiff Antonio was employed by Defendants at Luke's Bar & Grill from approximately August 2015 until on or about January 19, 2021.

209. Defendants employed Plaintiff Antonio as a salad preparer and griller.

210. Plaintiff Antonio regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

211. Plaintiff Antonio's work duties required neither discretion nor independent judgment.

212. Throughout his employment with Defendants up until March 2020, Plaintiff Antonio regularly worked in excess of 40 hours per week.

213. From approximately August 2015 until on or about August 2019, Plaintiff Antonio worked from approximately 12:00 p.m. until on or about 11:00 p.m., Saturdays through Thursdays (typically 66 hours per week).

214. From approximately August 2019 until on or about March 2020, Plaintiff Antonio worked from approximately 1:00 p.m. until on or about 10:00 p.m., Saturdays through Wednesdays (typically 45 hours per week).

215. From approximately March 2020 until on or about January 19, 2021, Plaintiff Antonio worked from approximately 3:00 p.m. until on or about 9:00 p.m. Fridays through Tuesdays (typically 30 hours per week) .

216. Defendants paid Plaintiff Antonio his wages in a combination of check and cash.

217. From approximately August 2015 until on or about December 2018, Defendants paid Plaintiff Antonio $13.00 per hour.

218. From approximately January 2019 until on or about December 2019, Defendants paid Plaintiff Antonio $14 per hour.

219. From approximately January 2020 until on or about January 2021, Defendants paid Plaintiff Antonio $16 per hour.

220. Plaintiff Antonio's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

221. For example, Defendants required Plaintiff Antonio to work an additional 30 minutes past his scheduled departure time on several occasions, and did not pay him for the additional time he worked.

222. Defendants never granted Plaintiff Antonio any breaks or meal periods of any kind.

223. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Antonio regarding overtime and wages under the FLSA and NYLL.

224. Defendants did not provide Plaintiff Antonio an accurate statement of wages for all his hours worked, as required by NYLL 195(3).

225. Defendants did not give any notice to Plaintiff Antonio, in Mixteco or Spanish (Plaintiff Antonio's primary languages), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

226. Defendants required Plaintiff Antonio to purchase "tools of the trade" with his own funds—including personal protective masks.

*Defendants' General Employment Practices*

227. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week

without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

228. Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

229. Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

230. Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

231. Defendants required Plaintiffs Sosa, Gomez, Miranda, Ramos and all other delivery workers and food runners to perform general non-tipped tasks in addition to their primary duties as tipped workers.

232. These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

233. These Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general bar/restaurant work with duties, including the non-tipped duties described above.

234. These Plaintiffs and all other tipped workers were payed at or below the tip-credit rate by Defendants.

235. However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

236.     Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

237.     In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was at or below the tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

238.     Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

239.     Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

240.     Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received.

241.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

242.     On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

243.     Defendants paid Plaintiffs their wages in a combination of check and cash.

244.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

245.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

246.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

247.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

248.     Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

249.     Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

250.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

251.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

252.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

208.    Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

209.    Plaintiffs bring their New York Labor Law minimum wage, wage deduction, and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

210.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the

calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

211.    There are questions of law and fact common to the Class including:

a) What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b) What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c) What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d) Whether Defendants failed and/or refused to pay Plaintiffs the minimum wage within the meaning of the New York Labor Law;

e) Whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

f) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

g) What are the common conditions of employment and in the workplace, such as recordkeeping, clock-in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage.

212.    The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of wages and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

213.    The representative parties will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class. The Named Plaintiffs are represented by

attorneys who are experienced and competent in both class action litigation and employment litigation.

214.    The common questions of law and fact predominate over questions affecting only individual members.

215.    A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

216.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

217.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

218.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

219.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

220.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

221.     Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 Class Members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

222.     Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class Members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

223.     Plaintiffs (and the FLSA and Rule 23 Class Members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

224.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

225.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA and Rule 23 Class Members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

226.     Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class Members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

227.     Plaintiffs (and the FLSA and Rule 23 Class Members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

228.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

229.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs,

controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

230. Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs (and the Rule 23 Class Members) less than the minimum wage.

231. Defendants' failure to pay Plaintiffs (and the Rule 23 Class Members) the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

232. Plaintiffs (and the Rule 23 Class Members) were damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE NEW YORK STATE LABOR LAW**

233. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

234. Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs (and the Rule 23 Class Members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

235. Defendants' failure to pay Plaintiffs (and the Rule 23 Class Members) overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

236. Plaintiffs (and the Rule 23 Class Members) were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

237.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

238.     Defendants failed to pay Plaintiffs (and the Rule 23 Class Members) one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' (and the rule 23 Class members') spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class Members) an additional hour's pay for each day Plaintiffs' (and the FLSA and Rule 23 Class Members') spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

239.     Plaintiffs (and the Rule 23 Class Members) were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

240.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

241.     Defendants failed to provide Plaintiffs (and the Rule 23 Class Members) with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

242.     Defendants are liable to each Plaintiff (and the Rule 23 Class Members) in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

243.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

244.     With each payment of wages, Defendants failed to provide Plaintiffs (and the Rule 23 Class Members) with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

245.     Defendants are liable to each Plaintiff (and the Rule 23 Class Members) in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

246.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

247.     Defendants required Plaintiffs (and the Rule 23 Class Members) to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

248.     Plaintiffs (and the Rule 23 Class Members) were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION
### OF THE NEW YORK LABOR LAW

249.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

250.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

251.     Defendants made unlawful deductions from Plaintiffs' (and the Rule 23 Class Members') wages; specifically, Defendants deducted two days of hours worked from Plaintiff Hernandez's weekly wages for being caught drinking. Defendants deducted three to four shifts from Plaintiff Gomez's weekly wages during 2016. Defendants claimed Plaintiff Gomez did not work those shifts however, Plaintiff was present and working.

252.     The deductions made from Plaintiffs' (and the Rule 23 Class Members') wages were not authorized or required by law.

253.     Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' (and the Rule 23 Class Members') wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

254.     Plaintiffs (and the Rule 23 Class Members') were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

255. Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

256. Defendants did not pay Plaintiffs and the rule 23 Class members on a regular weekly basis, in violation of NYLL §191.

257. Defendants are liable to each Plaintiff and the rule 23 Class members in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a) Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b) Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and rule 23 Class members;

(c) Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and rule 23 Class members;

(d) Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA and rule 23 Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA and rule 23 Class members;

(f)     Awarding Plaintiffs and the FLSA and rule 23 Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA and rule 23 Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the rule 23 Class members;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the rule 23 Class members;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs and the rule 23 Class members;

(k)     Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs and the rule 23 Class members;

(l)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' (and the rule 23 Class members') compensation, hours, wages and any deductions or credits taken against wages;

(m)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs and the rule 23 Class members;

(n)     Awarding Plaintiffs and the rule 23 Class members damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits

taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)     Awarding Plaintiffs and the rule 23 Class members damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)     Awarding Plaintiffs and the rule 23 Class members liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)     Awarding Plaintiffs and the FLSA and rule 23 Class members pre-judgment and post-judgment interest as applicable;

(r)      Awarding Plaintiffs and the FLSA and rule 23 Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)     All such other and further relief as the Court deems just and proper.


## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

June 22, 2021

MICHAEL FAILLACE & ASSOCIATES, P.C.

By: _____/s/ Michael Faillace_____
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*